HON. ARTHUR LEVITT Chairman New York State Emergency Financial Control Board For the City of Yonkers
This is in reply to a request by the Counsel to the Emergency Control Board for the City of Yonkers for my opinion on certain matters relating to the Hudson River Museum in the City of Yonkers. Specifically, my opinion is requested as to whether the Museum is a public museum and part of the City of Yonkers, whether its employees are employees of the City and finally whether the Museum Director may be paid severance pay upon his resignation?
The Hudson River Museum, while chartered by the Regents of the University of the State of New York as an educational corporation, was established and is governed by Local Law No. 16, 1947, of the City of Yonkers. That Local Law, which has not been repealed, provides that the governing board of trustees are to be appointed by the Mayor, with the advice and consent of the Common Council. The museum buildings, set aside for the use of the museum by the Local Law, is owned by the City which pays for the insurance, maintenance and debt service on the building, and no rent is charged to the museum. The Local Law also provides that museum employees are to be appointed and removed in accordance with the Civil Service Law and regulations applicable to the classified civil service. The board of trustees is to submit its annual budget requests for operation and maintenance to the city manager, and such estimates are to be treated the same as "all other estimates from city departments". The moneys appropriated by the Common Council for the museum are included in the city tax levy. In addition, the trustees are empowered to take and hold gifts, grants, devises or bequests of real or personal property.
Until January, 1976, there was no question but that the Museum was a city agency and that its employees were civil service employees of the city. By Chapter 871 of the Laws of 1975 (the "Act"), the Yonkers Control Board was created and its powers established. The Act requires the city and Board to develop a financial plan for the city and its covered organizations, and the Board is given the power of prior approval of all contracts and other obligations of the city and its covered organizations and prohibits expenditures by the city or the covered organizations except in compliance with the Yonkers Financial Emergency Act. A "covered organization" is defined as "any governmental agency, public authority or public benefit corporation which receives or may receive monies directly, indirectly or contingently * * * from the city".
Pursuant to the financial plan approved for the city, monetary support of the Museum by the city was terminated January 16, 1976, and further, until July 1, 1976, no city funds were used in the operation of the Museum, although the city continued to pay maintenance, insurance and debt service on the building. The Museum continued to operate with funds from other sources and, since July 1, partially with city funds.
The Museum Director has resigned, and the Museum proposes to pay him $18,000 as lump-sum severance pay. The Control Board contends that the Museum is a "covered organization" and that it has the power to approve its contracts and obligations, including the severance pay proposal.
In response to the Board's specific questions, it is my opinion that there is no doubt but that the Museum is a public museum and part of the City of Yonkers. The Museum's powers are established not by the charter conferred by the Regents but by Local Law No. 16. The trustees are appointed by the Mayor with the advice and consent of the council; its employees may be appointed and removed solely pursuant to the Civil Service Law; funds for its operation and maintenance may be raised by a city tax levy; and it occupies city property. All of these are clearly attributes of a public agency, indeed of an agency of the city. So long as Local Law No. 16 remains in effect, the Museum is a city agency, even though it receives all or part of its funding from sources outside the city treasury.
As to the Board's second question, the answer to that too flows from Local Law No. 16. The law specifically provides that the employees of the Museum are civil service employees of the city. Since the Museum has no legal existence except as an agency of the city, its employees must be considered to remain city employees regardless of the source of their funding; since even when funded primarily by the city, the Museum trustees had the power to hold and use property in its own name, including money. Had the positions been legally abolished in January, 1976, the Museum would have had to have been closed or rent charged by the city for use of the property and Local Law No. 16 amended to change the status of the Museum. Those steps not having been taken, the Museum employees have been at all times employees of the city.
The answer to the third question is also governed by the effect of Local Law No. 16. The Museum guidelines provide for severance pay for the Director only when his employment is terminated by the Board of Trustees and then only in lieu of one year's notice. No provision is made for severance pay in the event of the Director's resignation. Since Local Law No. 16 makes the Museum employees city employees, the Director's right to severance pay is the same as that of any other city employee. As pointed out to you by the counsel to the Retirement System, if the severance pay is a retirement benefit it would be barred by State law which restricts retirement benefits to those provided under the Retirement and Social Security Law.
Severance pay, unless in compensation for accrued vacation credits, would also constitute a gift of city moneys, barred by Article VIII, § 1 of the State Constitution since no services were rendered in consideration of the payment. I conclude, therefore, that the Museum Director may not be paid lump-sum severance pay on his resignation.
In any event, since the Museum is a covered agency, the payment would be subject to review and approval in the Board's discretion under the city's financial plan.